UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SELENA Y. HANCOCK,

Plaintiff,

v.

WASHINGTON HOSPITAL CENTER,

Defendant.

Civil Action No. 10-cv-487 (RLW)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Selena Hancock ("Hancock") was formerly employed as a medical assistant at the Washington Hospital Center ("WHC"). She commenced this action in March 2010, alleging that WHC failed to accommodate her disabling nerve conditions known as Polyradiculopathy and Polyneuropathy and wrongfully terminated her in violation of the Americans with Disabilities Act ("ADA").[1] A jury trial commenced on August 30, 2013.

At the close of WHC's case, Hancock moved for judgment as a matter of law under Rule 50(a) on her failure-to-accommodate claim and on WHC's affirmative defense of failure to mitigate damages. Sept. 4, 2013, Trial Transcript ("Tr.") at 105:22-109:16. Consistent with the best practices governing pre-verdict motions, the Court reserved ruling on Hancock's motion. *See* 9-50 Moore's Federal Practice-Civil § 50.33 ("[I]t is often the better and safer practice for trial courts to refrain from granting a pre-verdict motion for judgment until after the jury reaches or fails to reach a verdict. The primary reason for this practice is that if it becomes

---

[1] Hancock also pursued a claim for intentional infliction of emotional distress and a claim for retaliatory discharge. She later voluntarily dismissed her retaliatory discharge claim with prejudice. Dkt. No. 16. By an order entered on December 7, 2012, the Court granted WHC's motion for summary judgment with respect to Hancock's intentional infliction of emotional distress claim. December 7, 2012 Memorandum Opinion (Dkt. No. 24).

necessary to grant the motion, the jury verdict may be reinstated without a costly retrial if the reviewing court finds that judgment as a matter of law was erroneously granted."); *Mattivi v. South African Marine Corp. "Huguenot,"* 618 F.2d 163, 166 n.2 (2d Cir. 1980); *Hladyshewski v. Robinson*, 557 F.2d 1251, 1255 n.3 (8th Cir. 1977) ("[T]he preferred practice is to reserve ruling on a motion for a directed verdict until after the verdict in order to avoid a retrial with its resulting delay, trouble and expense and the possibility of a second appeal.") (internal quotation marks and citations omitted); Fed. R. Civ. P. 50 (Advisory Committee Notes) ("[T]he court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence[.]"). After the jury returned a verdict in favor of WHC, the Court denied Hancock's Rule 50(a) motion on the grounds that, taking the evidence in the light most favorable to the non-movant, a reasonable juror could find in favor of WHC. Sept. 5 Tr. at 29:18-30:10. Hancock now renews her motion for judgment as a matter of law under Rule 50(b) and, alternatively, moves for a new trial under Rule 59(a). Upon careful review of the entire record, the parties' written submissions and arguments put forth at the motions hearing, the Court **DENIES** Hancock's motions.

## DISCUSSION

### I. Judgment as a Matter of Law

#### a. Legal Standard

After a jury trial, a court may grant a motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure if it finds that "a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a)(1). The court deciding on a motion for judgment as a matter of law must consider the evidence in the light most favorable to the non-movant and disregard all evidence favorable

to the moving party that the jury is not required to believe. *Huthnance v. District of Columbia*, 793 F. Supp. 2d 183, 196-97 (D.D.C. 2011); *In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 80 (D.D.C. 2006); *Thomas v. Mineta*, 310 F. Supp. 2d 198, 203 (D.D.C. 2004). In addition, the court "is not to resolve legitimately disputed issues of fact already decided by the jury," even if it finds "the evidence that led to the jury verdict unpersuasive, or that it would have reached a different result if it were sitting as the fact-finder." *Halcomb v. Woods*, 767 F. Supp. 2d 123, 134-35 (D.D.C. 2011) (internal quotation marks and citations omitted). The court should grant the motion only when "the non-movant's evidence is so insufficient that a reasonable finder of fact could not possibly find for the non-movant." *Id.* (internal quotation marks and citations omitted); *see also In re Lorazepam*, 467 F. Supp. 2d at 80.

### b. Analysis

Hancock contends that she is entitled to judgment as a matter of law on her failure-to-accommodate claim because she proved that (1) she is a disabled person within the meaning of the ADA and WHC had notice of her disability; (2) she is a qualified individual with a disability under the ADA because she performed the essential functions of a medical assistant with an accommodation of no triage; (3) she requested light duty of no triage and no lifting over fifteen to twenty pounds as a reasonable accommodation; and (4) although WHC had previously granted the requested accommodation, WHC refused to continue to provide accommodation because it wanted Hancock to return to full duty, and ultimately terminated her. WHC counters by arguing that (1) Hancock is not a qualified individual because she could not perform the essential function of triage; (2) Hancock failed to demonstrate that the requested accommodation was reasonable; and (3) WHC reasonably accommodated Hancock's condition by allowing her to take a leave of absence.

The ADA prohibits discrimination against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). It defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA does not require an employer to reallocate essential functions in order to accommodate an employee's disability. 29 C. F. R. Pt. 1630, App. § 1630.2(o); *see also Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir. 1995) ("An employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job."); *Terrazas v. Medlantic Healthcare Grp., Inc.*, 45 F. Supp. 2d 46, 53 (D.D.C. 1999). Accordingly, a plaintiff seeking to establish a prima facie case of discrimination for failure to accommodate under the ADA must demonstrate that (1) she was an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) with reasonable accommodation she can perform the essential functions of her job; and (4) the employer refused to make such accommodations. *Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 35 (D.D.C. 2011) (citing *Lytes v. D.C. Water and Sewer Auth.*, 527 F. Supp. 2d 52, 60 (D.D.C. 2007), *aff'd*, 572 F.3d 936 (D.C. Cir. 2009)); *Spelke v. Gonzales*, 516 F. Supp. 2d 76, 81 (D.D.C. 2007). Here, the Court finds that Hancock is not entitled to judgment as a matter of law with respect to her failure-to-accommodate claim because a reasonable jury could have found that Hancock was not a qualified individual and that the requested accommodation of no triage was unreasonable.

Generally, the question of what constitutes an essential function of a job is a factual issue to be determined by a jury. *See Baker v. Potter*, 294 F. Supp. 2d 33, 44 (D.D.C. 2003) (collecting cases). In the instant case, the parties stipulated in their pretrial statement that Hancock's duties as a medical assistant included "registering patients, triaging patients, billing,

and patient referrals, assisting nurses, cleaning exam rooms, stocking and ordering supplies, answering telephones." Joint Pre-Trial Statement at §5(B) (Dkt. No. 33). The parties further stipulated that triaging patients, which entails "preparing patients to be seen by a physician, escorting patients to the exam room, and taking and recording patients' information in their charts," was an essential function of Hancock's job. *Id.* at § 5(B)-(C). At trial, witnesses from both parties testified that Hancock was placed on modified duty and periodically excused from performing triage because her disability prevented her from lifting over twenty pounds and triaging patients. In other words, the evidence presented at trial established that Hancock was unable to perform an essential function of her job, with or without accommodation.

Nevertheless, Hancock claims that she is a qualified individual within the meaning of the ADA because WHC "waived" the essential function of triage by accommodating her request for modified duty with no triage for a period of time. Based on the same reasoning, Hancock also argues that WHC failed to reasonably accommodate her when it refused to continue to accommodate her request for light duty with no triage. The Court disagrees.

Contrary to Hancock's claim, the mere fact that an employer voluntarily accommodates an employee's disability by temporarily eliminating an essential function does not mean that the employer has irrevocably waived the essential function of the job. Nor does it mean that an employee who is unable to perform an essential function of her job with or without accommodation is a qualified individual within the meaning of the ADA. At the motions hearing, counsel for Hancock failed to cite a single case in support of her waiver argument. *See* Dec. 9, 2013 Mot. Hr'g. Tr. Indeed, it appears that the case law on this issue overwhelmingly favors the contrary view, that is, an employee who cannot perform an essential function is not a qualified individual under the ADA, even if the employer previously chose to accommodate the

employee by excusing the employee from performing the essential function. *See, e.g.*, *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003); *Amadio v. Ford Motor Co.*, 238 F. 3d 919, 929 (7th Cir. 2001) ("[T]he fact that Ford generously granted extended leaves to its employees-in *rare* cases, up to two years-does not necessarily bind Ford to *repeatedly* grant successive leaves to [plaintiff,]" where plaintiff is unable to perform the essential functions of his job and does not qualify for protection under the ADA) (emphasis in original); *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995).

Similarly, an accommodation that eliminates an essential function of a job is unreasonable under the ADA, even if the employer voluntarily provided such an accommodation in the past. *See, e.g.*, *Walton v. Mental Health Ass'n. of Southeastern Pennsylvania*, 168 F.3d 661, 671 (3rd Cir. 1999) (employer's decision to discontinue the accommodation of unpaid leave does not violate the ADA where the absent employee would not be performing the essential functions of her position); *Hill v. Harper*, 6 F. Supp. 2d 540, 544 (E.D. Va. 1998) (previous accommodation that effectively eliminated the essential function of a jail deputy is not a reasonable accommodation, and employer was not required to continue the accommodation); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997) (declining to require the employer city to continue to accommodate plaintiff police officer by eliminating an essential function of the job).

*Phelps v. Optima Health, Inc.*, 251 F.3d 21 (1st Cir. 2001) is particularly instructive. There, plaintiff, a staff nurse at a hospital, was unable to perform the normal tasks of her job due to back injuries. To accommodate her disability, the manager of plaintiff's unit created a special position of "medication nurse" and allowed plaintiff to share her patient load with her sister who worked in the same unit. When a new manager took over plaintiff's unit and

6

concluded that plaintiff was unable to perform the essential functions of the clinical nurse position, she dismissed plaintiff. *Id.* at 24. Noting that several courts have held that, "even when an employer and employee have made arrangements to account for the employee's disability-a court must evaluate the essential functions of the job without considering the effect of the special arrangements," the court in *Phelps* held that "[t]he fact that an employee might only be assigned to certain aspects of a multi-task job does not necessarily mean that those tasks to which she was not assigned are not essential." *Id.* at 25-26 (citing cases). The court further rejected plaintiff's argument that given the special work sharing arrangement, lifting was not an essential function with respect to plaintiff, holding that "evidence that accommodations were made so that an employee could avoid a particular task 'merely shows the job could be restructured, not that [the function] was non-essential.'" *Id.* at 26 (citing *Basith v. Cook County*, 241 F.3d 919, 930 (7th Cir. 2001)).[2] The same reasoning applies here.

It is undisputed that triage was an essential function of Hancock's position. It is also undisputed that Hancock was medically restricted from performing triage due to her disability. At trial, several witnesses testified to the gravity of Hancock's disability: Dr. Ross Myerson, medical director for occupational medicine at WHC, testified that Hancock told him that she could not do her full job, Sept. 3 Tr. at 146:13-16; Dr. Patrick Noel, Hancock's treating physician, likewise indicated on various disability benefit forms that Hancock was unable to perform the essential functions of her job and may have been permanently damaged. *See, e.g.*,

---

[2] Hancock relies on *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) for the unremarkable principle that a plaintiff need only show that an accommodation seems reasonable on its face. However, neither *Barnett* nor *Taylor v. Rice*, 451 F.3d 898 (D.C. Cir. 2006)— another case Hancock cites—supports Hancock's position that an accommodation that eliminates an essential function is reasonable under the ADA. In fact, in *Taylor*, the appellate court reversed the district court's granting of summary judgment in favor of the defendant partly because a factual issue existed as to whether the proposed accommodation would have eliminated an essential function. 451 F.3d at 904-07.

Def. Ex. 46. In addition, Renee Nesbith, clinical manager in WHC's ambulatory care center, testified that due to Hancock's restrictions, other medical assistants were forced to work on the floor more often. Sept. 3 Tr. at 118:20-119:19. Furthermore, at the conclusion of the trial, the jury was instructed that while an employer may reallocate essential job functions as a reasonable accommodation, "the fact that the defendant may have offered certain accommodations to an employee or employees in the past does not mean that the same accommodations must be forever extended to the plaintiff, or that those accommodations are necessarily reasonable under the ADA." Jury Instruction No. 24, Sept. 5 Tr. at 6:4-8. Under these circumstances, a reasonable jury could have concluded that Hancock was not a qualified individual within the meaning of the ADA and that the requested accommodation of no triage was unreasonable.

Accordingly, Hancock's motion for judgment as a matter of law is **DENIED**.[3]

## II. Motion for a New Trial

Alternatively, Hancock argues that she is entitled to a new trial under Rule 59(a) on the following grounds: (1) the evidence presented at trial revealed that WHC has a policy of accommodating disabled employees for 90 days only ("90-day only policy"), which constitutes a *per se* violation of the ADA; (2) the weight of the evidence mandates a new trial on the failure-to-accommodate claim and the termination claim; (3) the evidence presented at trial revealed that WHC imposed a "100% healed" rule on Hancock in violation of the ADA; and (4) the Court committed several errors during trial, including permitting the testimony of Hancock's treating physician and related exhibits in the absence of an expert report and providing the business

---

[3] Hancock also contends that she is entitled to judgment as a matter of law on WHC's failure-to-mitigate affirmative defense. In light of the Court's denial of Hancock's post-trial motions, the Court declines to resolve the issue at this time. Hancock's counsel also agreed at the motions hearing that the Court need not address the issue at this time. *See* Dec. 9, 2013 Mot. Hr'g. Tr.

judgment rule instruction to the jury. The Court will address each argument in turn.

### a. Legal Standard

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may grant a new trial on "all or some of the issues" following a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). However, a new trial should be granted "only when the court is convinced that the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice. Generally, a new trial may only be granted when a manifest error of law or fact is presented. Moreover, the court should be mindful of the jury's special function in our legal system and hesitate to disturb its finding." *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 6 (D.D.C. 2007) (internal quotation marks and citations omitted); *Thomas v. Mineta*, 310 F. Supp. 2d 198, 206 (D.D.C. 2004); *Lewis v. Elliott*, 628 F. Supp. 512, 515-16 (D.D.C. 1986) ("A trial judge should grant a new trial if the verdict is against the weight of the evidence, damages are excessive, for other reasons the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions.") (citations omitted).

### b. Analysis

*The 90-day only policy*

Hancock claims that she is entitled to a new trial because the testimony of Dr. Myerson revealed that WHC has a policy of limiting accommodations of disabled employees to 90 days, after which they must apply for disability benefits or go on a leave of absence. Hancock argues that this so-called 90-day only policy is a *per se* violation of the ADA. She further claims that she has been severely prejudiced by the disclosure of this supposedly new and material

9

evidence at trial, which she contends is a "smoking gun" that would have established WHC's liability early in the litigation.

After reviewing Dr. Myerson's testimony in its entirety, the Court concludes that Dr. Myerson's testimony does not establish the existence of the so-called 90-day only policy. At trial, Hancock's counsel asked Dr. Myerson if there was a policy at WHC that prohibits the hospital from accommodating disabled employees past 90 days. Dr. Myerson responded that "90 days is the general time frame that we use with respect to accommodation." Sept. 3 Tr. at 134:21-25. However, Dr. Myerson also stated that WHC treats each case individually: "For example, if a patient is making progress and we anticipate further progress or we don't know if there's going to be further progress or we need more information, we will extend those restrictions." Sept. 3 Tr. at 135:2-7; *see also* Sept. 3 Tr. at 136:11-20 ("[T]he general guideline in our institution has been 90 days….However, we treat every case individually. And if there appears to be progress, if we think someone is going to be able to return to their usual work, management can accommodate for longer.").

Furthermore, it is unclear from Dr. Myerson's testimony exactly what the purported 90-day only policy means. Dr. Myerson testified that he informed Hancock that she may need to find another position *within* WHC if her restrictions were permanent. Sept. 3 Tr. at 151:23-152:7; *see also* Sept. 3 Tr. at 154:20-155:4 ("What I said in the document was that I informed her that they may not be able to accommodate more than 90 days. I wanted her to understand that she had been accommodated for a period of time. And that we were, as the hospital policy, reaching the end of that. That's why we needed more information to determine whether it was likely she was going to be able to go back and do her job in the foreseeable future or whether or not another scenario was going to unfold where she may need to look for

10

alternative work."). In other words, one can plausibly interpret Dr. Myerson's description of the 90-day only policy to mean that after 90 days, WHC will try to find another position or accommodation for the employee within the hospital, rather than terminate the employee. One can also interpret Dr. Myerson's testimony to suggest that WHC only intended to waive the essential function of triage for 90 days to accommodate Hancock.

Given this somewhat conflicting testimony, the Court cannot conclude that WHC imposes a 90-day limit on accommodating its disabled employees. The Court also notes that Dr. Myerson is a physician and does not play a role in setting the hospital's management policies. *See* Sept. 3 Tr. at 136:9-11 ("I'm a physician. I deal with the medical issues. The decision to accommodate and what accommodations are reasonable are management."); *see also* Sept. 3 Tr. at 140:20-25 ("When I see a patient, and I get information, and I make a determination what restrictions they may need for their particular position as a result of the medical condition, then those restrictions that I write go to the manager. The manager, then, decides whether they can accommodate with those restrictions or not. That's not my decision."). A testimony from a single witness who does not play a role in WHC's management is insufficient to establish a *per se* violation of the ADA, particularly where the actual policy is in evidence and contains no such limitations. *See* Pl. Ex. 15 (WHC Policy on Accommodations for Individuals with Disabilities).

Moreover, the Court finds that Hancock was not prejudiced by the allegedly belated disclosure of the 90-day only policy. As WHC points out, Hancock has known about the 90-day issue for several years: it was mentioned in Dr. Myerson's meeting notes that were produced to Hancock during the early phase of fact discovery. Thus, Hancock had ample time to consider the issue prior to trial. Tellingly, after Dr. Myerson "revealed" WHC's 90-day only policy, Hancock did not seek continuance to address this allegedly new and material information.

Instead, Hancock's counsel argued to the jury at closing that the 90-day only policy violated the ADA. *See* Sept. 4 Tr. at 123:16-124:6 ("It appears to me from Dr. Myerson's testimony that Washington Hospital Center has a particular policy on accommodating disabled individuals, and that policy is 90 days…I submit to you that is a violation of the Americans with Disabilities Act on its face...So it appears that Washington Hospital Center tried to accommodate her, and then the 90 days was up. So she was put out. That's their policy. It's a violation of the law."). The mere fact that the jury disregarded the argument in light of all the other evidence does not warrant a new trial. A party seeking a new trial on the grounds of unfair surprise must show that it was deprived of a fair hearing and demonstrate "reasonably genuine surprise, which necessarily was inconsistent with substantial justice and which resulted in actual prejudice." *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176-77 (D.D.C. 1986) (internal quotation marks and citations omitted). In *Sedgwick*, the court noted that a continuance is often a prerequisite to obtaining a new trial on the ground of unfair surprise. *Id.* (collecting cases). No such motion was made here.

Accordingly, Hancock's motion for a new trial on this ground is **DENIED**.

*Weight of the Evidence*

Hancock claims that a new trial is appropriate with respect to her failure-to-accommodate claim because she has met each element of her claim and proved that WHC denied her a reasonable accommodation for her disability. For the reasons stated above, the Court finds that Hancock failed to meet the standards of Rule 59(a) with respect to her failure-to-accommodate claim.

Hancock also asserts that a new trial is warranted on her termination claim because the evidence presented at trial conclusively established that WHC terminated her, rather

12

than placing her on a leave of absence. At trial, Hancock testified that she never applied for leave and was instead terminated by Shava Russell, former clinical manager at WHC who was Hancock's direct supervisor during the relevant time period. In addition to her own testimony, Hancock points out that Primrose Horn, former clinical program manager at WHC, admitted that WHC had a specific procedure for a leave of absence under its agreement with the union, which was not followed in Hancock's case. *See* Sept. 4 Tr. at 78:11-81:2. Hancock further notes that Pauline Aleibar, work life services specialist at WHC, acknowledged that Hancock never submitted a leave of absence form. Sept. 3. Tr. at 186:14-18.

Nevertheless, the Court finds that the weight of the evidence does not mandate a new trial on Hancock's termination claim because WHC presented sufficient evidence for a jury to conclude that Hancock applied for and was approved for a leave of absence. For instance, Aleibar testified that Hancock came to her office to pick up the medical leave of absence package, and that she personally met with Hancock and explained how to apply for short-term disability and her eligibility for FMLA. Sept. 3 Tr. at 158-62; Def. Ex. 17A ("EE came in to OH to report that she is applying for leave papers"). Aleibar further testified that, while Hancock did not formally submit a leave of absence request form, it was not unusual for employees seeking leave to fail to return the form. Sept. 3. Tr. at 194:4-22. Similarly, Marilyn Cox, clinical manager in WHC's occupational health department, testified that Hancock stopped by her office to let her know that she had picked up paperwork to apply for her leave. Sept. 4. Tr. at 44:16-25. Horn also testified that she approved Hancock's leave and believed Hancock had applied for a leave because Hancock had submitted the health care provider certification form, which is the only document necessary to approve an employee's leave of absence. Sept. 4 Tr. at 65:1-3, 85:16-86:9. In addition to witness testimony, WHC presented documentary evidence

13

suggesting that Hancock was placed on leave, including Hancock's health care provider certification form, Def. Ex. 20, and correspondences from WHC to Hancock regarding the expiration of her leave of absence. Def. Exs. 24, 26. Thus, the jury could have concluded that Hancock was placed on a leave of absence as an accommodation of her disability.[4]

Accordingly, Hancock's motion for new trial on her failure-to-accommodate claim and her termination claim is **DENIED**.

*100% healed rule*

Hancock contends that WHC imposed a "100% healed" rule on her in violation of the ADA. In support of this argument, Hancock relies primarily on the testimony of Shava Russell. Russell told Hancock that she needed to be cleared to come back to full duty by December 24, 2007 or she would have to make other arrangements. Sept. 3 Tr. at 96:2-9. Russell testified that she refused to accommodate Hancock because she needed Hancock to return to full duty. Sept. 3 Tr. at 101:20-23; Pl. Ex. 5.

The Court finds Hancock's argument unpersuasive in light of all the other evidence WHC introduced at trial concerning its efforts to reasonably accommodate Hancock's disability. As noted in the jury instructions, a leave of absence may constitute a reasonable accommodation under the ADA. *See* e.g., *Dark v. Curry Cnty.,* 451 F.3d 1078, 1090

---

[4] Hancock also dismisses WHC's claim that it placed her on a leave of absence as an accommodation for her disability, arguing that WHC failed to hold her position open as it was required to do by law, and that the 90-day only policy was the real reason why WHC put her on leave of absence. For the reasons discussed *supra*, the Court rejects Hancock's 90-day only policy argument. As for Hancock's claim that WHC was required to hold her job open, the ADA does not mandate that an employer hold a position open indefinitely: it only requires that the employer hold it open while the employee is on leave. *See* EEOC Enforcement Guidance on Reasonable Accommodation, *available at* http://www.eeoc.gov/policy/docs/accommodation.html. In this case, WHC left her position open until after Hancock's leave expired. Def. Ex. 39.

(9th Cir. 2006) (unpaid leave may be reasonable accommodation).  In addition, both Cox and Dr. Myerson testified at length about their efforts to get more information from Hancock regarding her condition so that WHC could assess the best way to address Hancock's restrictions and determine whether reassignment was appropriate.  *See* Sept. 3 Tr. at 145-50; Sept. 4 Tr. at 42-43.  Under the circumstances, Russell's testimony alone is insufficient to establish that the jury verdict in this case was "a seriously erroneous result" warranting a new trial.  *See Long*, 512 F. Supp. 2d at 6.

Accordingly, Hancock's motion on this ground is **DENIED**.

*Dr. Noel's testimony*

Likewise, the Court rejects Hancock's argument that the Court improperly permitted WHC to introduce portions of Dr. Noel's deposition testimony and related exhibits at trial.  Dr. Noel is an orthopedic surgeon who was Hancock's treating physician during the relevant time period.  Prior to trial, Hancock moved *in limine* to exclude certain medical documents and corresponding testimony from her healthcare providers under *Bynum v. MVM, Inc.*, 241 F.R.D. 52 (D.D.C. 2007), claiming that such evidence pertained to issues of causation, foreseeability, prognosis and permanency of her medical condition and could not be elicited in the absence of an expert report.  Dkt. No. 30-1, 4-6.  After the Court denied Hancock's motion *in limine*, Apr. 8, 2013 Order (Dkt. No. 40), Hancock's counsel renewed her objections at trial with respect to Dr. Noel's testimony and related exhibits based on the same grounds.  Sept. 3 Tr. at 8-11.  The Court overruled the objections on the grounds that under Rule 26(a)(2) of the Federal Rules of Civil Procedure, a treating physician who testifies regarding the opinions he gave contemporaneously during his treatment of a patient need not provide an expert disclosure.  Sept. 4 Tr. at 3-4.

15

It is well-established that a treating physician need not comply with the written report requirement under Rule 26(a)(2)(B) as long as he is testifying to the personal knowledge that he acquired during the care and treatment of a patient. *See, e.g.*, *Riddick v. Washington Hosp. Ctr.*, 183 F.R.D. 327, 330 (D.D.C. 1998) ("So long as a treating physician acquired the opinions that are the subject of the testimony directly through treatment of the plaintiff, the treating physician cannot be forced to file a written report required by Rule 126(a)(2)(B).") (internal quotation marks and citations omitted). The plain language of Rule 26(a)(2)(B) itself requires a written report by an expert witness only "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The advisory committee note accompanying Rule 26 adds that "[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26 (Advisory Committee Notes). The advisory committee note thus "recognizes the common sense proposition that a treating physician has a relationship with the patient that is typically separate from the case, based on his care and treatment of the patient, and thus he should not be deemed 'retained' based solely on that relationship." *Kirkham v. Société Air France*, 236 F.R.D. 9, 11 (D.D.C. 2006) (citation omitted). It also recognizes that "a treating physician will, like a fact witness, have personal knowledge based on his care and treatment, and to the extent fact testimony is being provided, it should not be subject to the requirement of a written report." *Id.* (citation omitted).

Here, Dr. Noel's testimony concerned his observations of Hancock during his treatment of Hancock in 2007 and 2008. He did not offer any testimony on causation or forward-looking opinion; all related exhibits were created by Dr. Noel contemporaneously with

his treatment of Hancock. For instance, Defendant's Exhibit 46, which is a disability benefit activation form, was prepared for Hancock by Dr. Noel and signed by him on February 5, 2008. Thus, this is not a situation in which a physician is solely retained by a party in connection with the litigation. *Cf. Kirkham*, 236 F.R.D. at 12 ("[W]hether the expert was 'retained or specially employed' in connection with the litigation must be considered, given the plain language of Rule 26(a)(2)(B).").

Contrary to Hancock's assertion, *Bynum* does not support the exclusion of Dr. Noel's testimony and related exhibits. While the court in *Bynum* held that a treating physician cannot testify about "plaintiff's *current* condition, prognosis, causation or permanency, and any other such forward-looking speculation, or other conclusion *reached with the benefit of hindsight and after the underlying events that g[i]ve rise*" to the lawsuit without an expert report, it reiterated that a treating physician may testify as a fact witness concerning information learned from "his actual treatment, examination, or analysis" of plaintiff's condition, without having to comply with the requirements for expert witnesses under Rule 26(a)(2). 241 F.R.D. at 53-54 (emphasis added). That is precisely what Dr. Noel did in his deposition testimony.

Hancock's attempt to compare Dr. Noel with another treating physician, Dr. Reginald Biggs, is unconvincing. Dr. Biggs is Hancock's psychiatrist whom the Court excluded on the grounds that Hancock did not identify him as an expert pursuant to Rule 26(a)(2). Unlike Dr. Noel's testimony, Dr. Biggs' proposed testimony pertained to Hancock's current condition and causation, namely, "the emotional pain and suffering [Hancock] endured and continues to endure as a result of WHC's refusal to accommodate." Dkt. No. 32 at 2. Thus, it was properly excluded for failure to comply with the expert disclosure requirements of Rule 26(a)(2). *See Bynum*, 241 F.R.D. at 54.

17

Accordingly, Hancock's motion for new trial on this ground is **DENIED**.

*The jury instruction*

Lastly, Hancock argues that the Court's decision to provide the business judgment rule instruction to the jury warrants a new trial. At trial, the Court provided the following instruction:

> The defendant has given a nondiscriminatory reason for its actions. If you disbelieve the defendant's explanations, then you may, but need not, find that the plaintiff has proved intentional discrimination. In determining whether the defendant's stated reason for its actions was a pretext or excuse for discrimination, you may not question the defendant's business judgment. In other words, you cannot find intentional discrimination simply because you disagree with the business judgment of the defendant or believe it is harsh or unreasonable. You are not to consider the defendant's wisdom. However, you may consider whether the defendant's reason is merely a cover-up for discrimination. Jury Instruction No. 22, Sept. 4 Tr. at 163:1-15.

Hancock contends that the instruction was inappropriate in this case because the business judgment rule usually applies to discrimination claims involving hiring, transfers or promotions where the claimant's qualifications are compared to other qualified employees. In this instance, Hancock claims that the instruction necessarily foreclosed any inquiry by the jury as to whether WHC's actions were discriminatory and constituted a termination because of her disability.

The business judgment rule instruction was derived from the Third Circuit Pattern Jury Instructions for Employment Claims under the Americans with Disabilities Act. *Available at* http://www.ca3. uscourts.gov/sites/ca3/files/9 Chap 9 2012_July.pdf. The Jury Instructions reference *Billet v. CJGNA Corp.,* 940 F.2d 812,825 (3d Cir. 1991), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), where the Third Circuit held that, "[b]arring discrimination, a company has the right to make business judgments on employee status." In that case, an employee alleged that he was terminated because of his age in violation

of the Age Discrimination in Employment Act ("ADEA'"). In response, the employer presented evidence of objective reasons for termination, including a poor performance evaluation, the employee's forging of a supervisor's signature, and his disregard for company policy and procedure. The Third Circuit affirmed the district court's order granting a motion for directed verdict in favor of the employer. *Billett* was not a failure-to-hire case (although it appeared from the facts of the case that his termination was partly due to corporate reorganization that resulted in a number of promotions and transfers)*,* and nothing in *Billet* or in the Third Circuit Pattern Jury Instructions—including the Comments to the Instructions—suggest that the application of the business judgment rule instruction should be limited to the types of cases Hancock mentions. Indeed, Hancock does not cite any authority in support of her position that the business judgment rule instruction is inappropriate in failure-to-accommodate cases such as hers.

    Moreover, the business judgment instruction did not necessarily prejudice Hancock. The instruction explicitly states that jurors may consider whether the defendant's reason is merely a cover-up for discrimination. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture."). Courts have rejected arguments similar to Hancock's in other failure-to-accommodate cases. *See, e.g.*, *Ragusa v. United Parcel Serv.*, No. 05 Civ. 6187 (WHP), 2009 WL 637100, at *4 (S.D.N.Y. Mar. 3, 2009) (rejecting plaintiff's argument that he is entitled to a new trial on his failure-to-accommodate claim because the court erroneously provided a business judgment rule instruction that confused the jury); *Bradley v.*

19

*Fed. Express Corp.*, No. A-04-CA-718 AWA, 2006 WL 1751775, at * 4 (W.D. Tex. May 25, 2006) (rejecting plaintiff's argument that business judgment rule instruction is inappropriate in a case involving a failure-to-accommodate claim). In any event, the potential for prejudice for including the business judgment rule instruction in this case was minimal, if any. As the Court noted at trial, the issue in the instant case is not whether Hancock was terminated because of her disability but whether she was terminated at all. Thus, the jury was not asked to determine whether WHC had a legitimate business reason for allegedly terminating Hancock. *See* Sept. 4 Tr. at 95:24-96:4.

Accordingly, Hancock's motion for a new trial is **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial are **DENIED**.

IT IS SO ORDERED.

Date: January 7, 2014

                                              ROBERT L. WILKINS
                                                United States District Judge